NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250842-U

NO. 4-25-0842

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 24, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* L.E., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Peoria County |
| Petitioner-Appellee, | ) | No. 18JA411 |
| v. | ) | |
| Danyeal P., | ) | Honorable |
| Respondent-Appellant). | ) | Vincent E. Cail, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Zenoff and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, concluding the trial court's determination respondent
was unfit and it was in L.E.'s best interest to terminate her parental rights was not
against the manifest weight of the evidence.

¶ 2     On July 24, 2025, the trial court entered an order terminating the parental rights of

respondent, Danyeal P., to her minor child, L.E. (born December 2011). Respondent appeals,

arguing the court erred in finding she was unfit and that termination of her parental rights was in

the minor's best interest. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4                                   A. Case Opening

¶ 5     On November 19, 2018, the State filed a petition for adjudication of wardship.

The petition alleged L.E. was a neglected minor pursuant to section 2-3 (1)(b) of the Juvenile

Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2018)) because she was

in an environment injurious to her welfare in that respondent was previously found unfit in Peoria County case Nos. 13-JA-186, 13-JA-187, 13-JA-188, and 13-JA-215. Additionally, L.E. was present during various incidents of domestic violence between respondent and Demetrius E., L.E.'s father. After a shelter care hearing, the trial court placed temporary custody and guardianship of L.E. with the Illinois Department of Children and Family Services (DCFS).

¶ 6 On February 27, 2019, the trial court adjudicated L.E. neglected pursuant to respondent's stipulation. Following the April 10, 2019, dispositional hearing, the court made L.E. a ward of the court and continued her custody and guardianship with DCFS.

¶ 7 B. Termination Petition

¶ 8 On January 24, 2025, the State filed a petition to terminate respondent's and Demetrius's parental rights. (We note Demetrius is not a party to this appeal.) Regarding respondent, the petition alleged she was an unfit parent in that she (1) failed to make reasonable progress toward the return of the minor to her care during a nine-month period after the minor was adjudicated neglected (750 ILCS 50/1(D)(m)(ii) (West 2024)) (count I) and (2) failed to maintain a reasonable degree of interest, concern, or responsibility for the minor's welfare (750 ILCS 50/1(D)(b) (West 2024)) (count II). The relevant nine-month period alleged by the State was March 15, 2024, to December 15, 2024.

¶ 9 C. Fitness Hearing

¶ 10 The trial court commenced the fitness hearing on June 12, 2025. At the outset, the State moved to dismiss count II and proceed only on count I. The court took judicial notice of various documents in the court file without objection.

¶ 11 Taylor Riegler testified she had been L.E.'s caseworker since March 2024. During the relevant time period, respondent was required to, *inter alia*, (1) participate in counseling,

(2) complete random drug drops, (3) cooperate with the agency, and (4) participate in visits with L.E. According to Riegler, respondent "was unwilling to do services, but was always polite and cooperative" with her. As a result of her psychological evaluation, it was recommended that respondent participate in counseling. Riegler indicated respondent was initially unsuccessfully discharged from counseling and Riegler "re-refer[ed]" her. However, respondent did not participate because she was "unwilling to do counseling again." Virtual counseling was available as a medical accommodation; however, respondent never requested such accommodation. Regarding drug drops, respondent was required to complete two drug drops per month. During the relevant time period, respondent did not complete any drug drops, nor did she provide any explanation for the missed drug drops. According to Riegler, respondent initially had supervised visitation with L.E. for four hours per month, but eventually, "it was changed back to one hour per month." Respondent had been "[m]ore or less" consistent in her visitation with L.E., and the visits were appropriate. However, the agency never considered respondent as a return-home option for L.E.

¶ 12　　　　On cross-examination, Riegler acknowledged respondent's house passed a home safety check and respondent completed a parenting class and a domestic violence class. When asked whether respondent's substance abuse was a "major concern," Riegler indicated it was "unclear because I didn't have any way to prove her sobriety" due to respondent's failure to participate in drug drops.

¶ 13　　　　Following arguments, the trial court found the State proved by clear and convincing evidence respondent failed to make reasonable progress toward the return of the minor to her care within the relevant time period. Specifically, the court observed, "It's undisputed that she declined to engage in services" during the relevant time period.

¶ 14                                    D. Best Interest Hearing

¶ 15          On July 9, 2025, the trial court conducted a best interest hearing. A best interest

report and accompanying addendum were filed without objection. The authors of the best interest

report indicated L.E. had been in her current foster placement since September 2024 and L.E.'s

"basic needs for food, shelter, health, and clothing [were] being met by her [foster parents]."

Further, L.E.'s medical needs were being met by her foster parents. The report described L.E. as

"not quick to make decisions but rather takes her time and thinks through all of her options."

¶ 16          Karen Dunne testified she had been L.E.'s counselor since approximately July

2024. According to Dunne, L.E. was mature for her age. In addition, L.E.'s current foster

placement provided the stability she needed, and L.E. felt happy and secure in the placement.

¶ 17          Grant M. testified he had been L.E.'s foster father since September 2024. He

indicated L.E. and his wife, Tomasina, had formed a close relationship. Grant described his own

relationship with L.E. as "a work in progress *** on [his] part as [he tried] to get closer to her

and make her more comfortable with [him]." He noted he attended a joint counseling session

with L.E. and had attempted "to do little things where [they] spend more time together." To

provide consistency for L.E., Grant and Tomasina were "open and honest with her with [their]

decisions [and] include her ***in anything that [they] do." Grant indicated he and Tomasina

were willing to provide permanency through adoption and, if L.E. wished, to facilitate visits

between L.E. and her biological family.

¶ 18          Sally Stevenson, a court-appointed special advocate supervisor, testified she had

been assigned to L.E.'s case since July 2021. According to Stevenson, L.E. felt more secure in

her current placement because "[s]he's allowing herself to feel or get involved" by getting to

know her foster parents' extended families. Regarding L.E.'s relationship with respondent,

Stevenson stated "[L.E.] loves [respondent] very much. However, she knows that [respondent] cannot consistently be in her life. She did tell me one time that she'd always wanted to go home with [respondent], but she knew in her heart that she had never really been there for her."

¶ 19 Riegler testified, initially, L.E. wished to be placed in a guardianship rather than be adopted. However, according to Riegler, those wishes changed, in part, because L.E. had been

"very upset with how *** the guardianship case is going with her brother. She's brought it up for quite a while. That [her brother] doesn't want to see [Demetrius]. And that [Demetrius] is taking him back to court and she doesn't want that same thing. She just wants to be done."

L.E. wanted to be "done with foster care and she wants it to be in a placement and know where she's going to be forever." It was the agency's recommendation that respondent's parental rights be terminated.

¶ 20 Following argument, the trial court found termination of respondent's parental rights was in L.E.'s best interest. The court began by noting because of respondent's medical condition, it was "unclear" to the court whether she would be able to provide for L.E.'s physical safety and welfare in the near future. Conversely, the court indicated the foster parents have provided for L.E.'s physical safety and welfare, and have additionally provided food, shelter, and clothing for the minor. Regarding L.E.'s identity, the court determined that factor "weighs both ways." The court further observed that L.E. "feels loved by [respondent] and I think she's probably becoming [*sic*] to feel loved by the foster parents." The court also addressed L.E.'s preference for adoption. Referencing the effect respondent's statement that she would not participate in services had on L.E., the court observed, "[S]he realized at that point in time that she was never going to go home again ***. That's really unsettling for the development of a

young person. And *** her wishes aren't going to be the tail that wags the dog." The court noted L.E.'s preference was "only one factor for the Court to consider." Moreover, the court determined L.E. felt valued in the foster home and her senses of security and familiarity weighed in favor of termination. Accordingly, the court observed "The need for stability, continuity of relationships, *** [L.E.'s] crying out for it in a lot of different ways. And *** it appears to me that the only way she can get that on a permanent basis would be through termination." The court concluded, after considering the statutory factors, it was in L.E.'s best interest that respondent's parental rights be terminated.

¶ 21      This appeal followed.

¶ 22                                II. ANALYSIS

¶ 23      On appeal, respondent contends both the unfitness finding and the best interest determination were against the manifest weight of the evidence.

¶ 24                             A. Unfitness Finding

¶ 25      Respondent first argues the trial court erred in finding her unfit. Specifically, she asserts, "The record from [the relevant time period] shows measurable, objective forward movement toward return, not the absence of progress the court found."

¶ 26      Termination of parental rights under the Juvenile Court Act is a two-step process. *In re Julian K.*, 2012 IL App (1st) 112841, ¶ 1. Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Pursuant to section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2024)), a parent may be found unfit if she fails to "make reasonable progress toward the return of the child to the parent during any 9-month period

- 6 -

following the adjudication of neglected *** minor." A "parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care during any 9-month period following the adjudication" constitutes a failure to make reasonable progress for purposes of section 1(D)(m)(ii). 750 ILCS 50/1(D)(m)(ii) (West 2024). This court has explained reasonable progress exists when a trial court "can conclude that *** the court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991). " 'Reasonable progress' is measured by an objective standard." *In re A.R.*, 2023 IL App (1st) 220700, ¶ 70.

¶ 27    We will not disturb a finding of unfitness unless it is against the manifest weight of the evidence. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68. "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the circuit court's finding on the basis of the evidence in the record." (Internal quotation marks omitted.) *J.H.*, 2020 IL App (4th) 200150, ¶ 68. "This court pays great deference to a trial court's fitness finding because of [that court's] superior opportunity to observe the witnesses and evaluate their credibility." (Internal quotation marks omitted.) *In re O.B.*, 2022 IL App (4th) 220419, ¶ 29.

¶ 28    Here, there was sufficient evidence to show respondent failed to make reasonable progress during the relevant nine-month period. Although respondent completed a parenting class and a domestic violence class and her home passed a safety check, she failed to complete a number of required services. During the relevant time period, respondent failed to complete any required drug drops and did not provide any explanation for the missed drug drops. Accordingly, Riegler testified the agency was unable to assess whether substance abuse was an area of concern because of respondent's failure to complete the required drug drops. Furthermore, individual

counseling was recommended for respondent. She was initially unsuccessfully discharged, and Riegler "re-referred" her for the service. However, respondent indicated she was "unwilling to do counseling again" and did not participate. Riegler described respondent as "unwilling to do services, but *** always polite and cooperative" with her. Indeed, while respondent signed the required releases and had been "[m]ore or less" consistent in her supervised visitation with L.E., the agency never considered respondent as a return-home option for L.E.

¶ 29    Based on this evidence, respondent did not "substantially fulfill *** her obligations under the service plan" and therefore did not make reasonable progress toward the return of L.E. to her care. 750 ILCS 50/1(D)(m)(ii) (West 2024). Accordingly, we cannot say the trial court's finding that respondent was unfit was against the manifest weight of the evidence.

¶ 30                            B. Best Interest Determination

¶ 31    Respondent next argues the trial court's best interest determination was against the manifest weight of the evidence.

¶ 32    When a trial court finds a parent to be unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. The State must prove by a preponderance of the evidence that termination of parental rights is in the minor's best interest. *D.T.*, 212 Ill. 2d at 366. In making the best interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2024)). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and

religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination [need not] contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. "A reviewing court affords great deference to a trial court's best-interest finding because the trial court is in a superior position to view the witnesses and judge their credibility." *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33. On review, "[w]e will not disturb a court's finding that termination is in the child[ ]'s best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005).

¶ 33        Respondent argues "the State did not prove that termination, rather than guardianship, better serves L.E.'s age-and-developmental needs." Notably, respondent does not cite any caselaw for such a premise. Understandably, respondent wishes to remain in L.E.'s life. However, the focus of the best interest portion of termination proceedings is on the child's best interest. *D.T.*, 212 Ill. 2d at 364. "The issue is no longer whether parental rights *can* be terminated; the issue is whether, in light of the child's needs, parental rights *should* be terminated." (Emphases in original.) *D.T.*, 212 Ill. 2d at 364.

¶ 34 In this case, the evidence in the record on appeal shows L.E. is in a good home and her needs are being met. The foster parents provided a safe home, medical services, and care for L.E., and they desired to make the relationship permanent. Further, L.E. desired permanency, as evidenced by her desire for adoption rather than guardianship. While L.E. clearly felt loved by respondent, the trial court concluded, "The need for stability, continuity of relationships, *** [L.E.'s] crying out for it in a lot of different ways. And *** it appears to me that the only way she can get that on a permanent basis would be through termination." Such evidence supports the court's decision that terminating respondent's parental rights served L.E.'s best interest. The court's decision is therefore neither unreasonable nor arbitrary. See *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16 (stating a trial court's decision is against the manifest weight of the evidence only when the opposite conclusion is apparent or when the decision is unreasonable, arbitrary, or not based on evidence). Thus, we conclude the trial court's best interest finding was not against the manifest weight of the evidence because we cannot say the evidence adduced clearly calls for the opposite conclusion.

¶ 35                                   III. CONCLUSION

¶ 36          For the reasons stated, we affirm the trial court's judgment.

¶ 37          Affirmed.